STATE, APPELLANT, *v.* CLEMENTS, RESPONDENT.

(No. 2,537.)

(Submitted June 25, 1908. Decided July 8, 1908.)

[96 Pac. 498.]

*Criminal Law—Banks and Banking—Making False Report— Capital Stock—Payment in Money.*

1. Defendant, as cashier and manager of a foreign banking corporation doing business in this state, made a report of the financial condition of the concern, as required by Laws of 1901, page 150, to the effect that the amount of its capital stock "actually paid in" was $100,000. The information filed under the provisions of section 988, Penal Code, alleged this statement to be false in that no more than $5,000 had ever been paid in cash, the balance having consisted of promissory notes. *Held*, that under the statutes of this state the capital stock of a foreign corporation may consist in whole or in part, of something other than money; and that the state, having failed to sustain the burden of proving that the capital stock of the corporation in question had not been paid in money or any other property, an order directing a verdict of acquittal was proper.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

A. B. CLEMENTS was charged with willfully signing and verifying a false written report of the affairs of a foreign banking corporation. From an order directing an acquittal, the state appeals. Affirmed.

*Mr. Albert J. Galen,* Attorney General, and *Mr. W. H. Poorman,* Assistant Attorney General, for Appellant.

A banking institution is not authorized to accept the individual notes of its directors and shares of stock of some other corporation as and for the capital stock of the bank; the authorities are to the contrary. (Civ. Code, secs. 570, 591; *Criswell* v. *Montana Cent. Ry. Co.,* 18 Mont. 167, 44 Pac. 525, 33 L. R. A. 554; *Iron Silver M. Co.* v. *Cowie,* 31 Colo. 450, 72 Pac. 1067; *State ex rel. University etc.* v. *Nichols* (Wash.), 94 Pac. 196; *Smith* v. *Pacific V. & P. Works,* 145 Cal. 352, 104 Am. St. Rep. 42, 78 Pac. 550; *First Nat. Bank* v. *Gunhus,* 133 Iowa, 409, 110 N. W. 611, 9 L. R. A., n. s., 471; *Coddington* v. *Canaday,* 157 Ind. 243, 61 N. E. 567.)

Subscriptions of stock are supposed to be paid in money (2 Thompson on Corporations, secs. 1606-1616), and the taking of a note therefor is not payment and does not extinguish the pre-existing indebtedness; at least, in the absence of a special agreement to that effect. (*Borland* v. *Nevada Bank,* 99 Cal. 89, 37 Am. St. Rep. 32, 33 Pac. 737; *Tolman* v. *Smith,* 85 Cal. 280, 24 Pac. 743; *Jagger Iron Co.* v. *Walker,* 76 N. Y. 521; *Dodge* v. *Emerson,* 131 Mass. 467.) "Actual" means real, truly, absolutely, positively, not conditionally. "Paid in" means absolute payment, not a mere promise to pay. Hence the phrase "actually paid in" can only mean absolute and unconditional payment. (*Bailey* v. *Pittsburgh Co.,* 69 Pa. St. 341; *Johnson* v. *McDonald,* 2 Abb. Pr. 290; *Holliday* v. *Union etc. Paper Co.,* 3 Colo. 343; *Crouch* v. *First Nat. Bank,* 156 Ill. 342, 40 N. E. 974.)

*Mr. E. E. Brennan,* for Respondent.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This is an appeal by the state from an order directing a verdict of acquittal.

The Aetna Banking and Trust Company was a foreign corporation doing business in this state, and having its principal office or place of business in this state, in the city of Butte. The defendant appears to have been one of the incorporators of the concern, and was its principal bookkeeper, cashier, and manager. It is charged that the defendant "did willfully, unlawfully, feloniously, intentionally and knowingly concur in making, executing, signing and verifying a certain written report and statement of the affairs and pecuniary condition of the said corporation." The entire report is then set forth; but the material statement which it is alleged was false is the following: "(3) The amount of the capital stock actually paid in is $100,000." It is alleged that the defendant knew this statement to be false, and that not more than $5,000, if any, of the capital stock of said concern had ever been paid in.

Upon the trial it appeared from the testimony of the state's witnesses that the Aetna Banking and Trust Company was incorporated under the laws of West Virginia in 1901, with a capital stock of $100,000, by persons residing in Butte. In June, 1901, a certified copy of the articles of incorporation was filed in the office of the county clerk and recorder of Silver Bow county. In July, 1901, the defendant, Clements, paid on account of his subscription to the capital stock the sum of $2,500 in cash, but on the same day withdrew the cash, and substituted his individual note for an equal amount. There were not any other subscriptions to the capital stock until in August, 1901, when Clements deposited his individual note for $97,500, and this was credited to the capital stock. In March, 1902, these two notes of Clements were displaced by three promissory notes of F. Augustus Heinze, aggregating $46,000, one note of Julia

H. Clements for $7,800 and four hundred and sixty-two shares of the capital stock of the Aetna Savings and Trust Company, which were given a valuation of $46,200. The foregoing is the history of the capital stock fund of the concern up to the time the report was filed, containing the declaration that "the amount of the capital stock actually paid in is $100,000." Upon the conclusion of the state's case the district court directed the jury to return a verdict of not guilty as against the defendant, for the reason that the state had failed to show that the declaration contained in the report was not true.

The prosecution was conducted under the provisions of section 988 of the Penal Code, which reads as follows: "Every director, officer, or agent of any corporation or joint-stock association, who knowingly concurs in making, publishing or posting any written report, exhibit or statement of its affairs or pecuniary condition, or book or notice containing any material statement which is false, or refuses to make any book or post any notice required by law, in the manner required by law, other than such as are mentioned in this chapter, is guilty of a felony." There is not any question but what the case falls within the provisions of this section, and the only matter for determination is: Does it appear from the evidence that the statement was false? The attorney general insists that the statement means that the entire capital stock of $100,000 had been paid in cash; while the defendant insists that the statement was literally true, and that it was not necessary for the capital stock to be paid in money.

While some of the courts hold that subscriptions to the capital stock of a corporation must be paid in money, the decided weight of authority appears to be to the contrary. Seymour D. Thompson, the author of Thompson on Corporations, is also the author of the article on "Corporations" found in Cyc. Practically all of volume 10 is given over to this article, which contains the citations of the latest decided cases,- as well as the author's opinion upon the various questions discussed. Upon the subject now under consideration, the learned author says:

"Where the charter or governing statute does not require payment in cash, then the shares may be paid for in such property as the corporation would have occasion to buy, at a fair valuation, provided the transaction is in good faith." (10 Cyc. 471.)

"Even where the charter, statute, or other governing instrument, by its terms, requires payment in money, yet, unless the language is such as to import a prohibition of anything but money, the courts are generally agreed that payment may be made in any kind of property or services which the corporation may lawfully purchase in the prosecution of its business, provided it be done in good faith, and provided such property or services be conveyed or rendered at a fair valuation. The reason is that the law does not require the parties to go through the vain transaction which would be exhibited if the subscriber should pay for his shares in cash, and if the corporation should hand back the cash in purchasing from the subscriber such property as the corporation might wish to buy from him; or what would be the equivalent of such a transaction, that there should be a mere exchange of checks between the parties." (10 Cyc. 472.)

"The officers of a corporation being trustees for its shareholders, and in a sense for its creditors, their trust cannot be defeated by anything short of actual payment for shares in good faith. This payment need not always be in money; but the rule is that, 'if a man contracts to take shares, he must pay for them, to use a homely phrase, "in meal or in malt." He must either pay in money or in money's worth. If he pays in one or the other, that will be a satisfaction.' " (10 Cyc. 472.)

"Within the rule already stated, a payment of shares may be made in any kind of property which the corporation, under its charter or governing statute, may take and hold; in any services such as it might lawfully contract for; or in any solvent credits which it might lawfully acquire. It may be made in land, labor, materials useful for its business, or in satisfaction of damages or other liabilities. In the absence of a statutory prohibition, the

shares of a corporation may be paid for in any kind of property, labor, services, or other commodity, such as the corporation might lawfully receive and pay for in money.'' (10 Cyc. 479.) The authorities in support of these texts are altogether too numerous to be reproduced here.

But aside from the general rules governing cases of this character, there is throughout our statutes a well-defined inference, to say the least, that the capital stock of a corporation of this character may consist, in whole or in part, of something other than money. The first of these statutes made its appearance in 1879. (Laws Extra Sess. 11th Ter. Leg. Assembly, p. 8.) It is there provided that all foreign corporations or joint-stock companies, before doing business in this territory, shall file in the office of the secretary of the territory and the county clerk of the county wherein the business is to be conducted a verified statement showing: ''* * * (2) The amount of capital stock. (3) The amount of its capital stock actually paid in, in money. (4) The amount of its capital stock paid in, in any other way, and in what.'' These provisions were carried into the Compiled Statutes of 1887 as sections 442 to 445, Fifth Division, General Laws, and into the Civil Code of 1895, as sections 1030 to 1038, and into the amendment of 1901. (Laws 1901, p. 150.) The amendment of 1901 was in force at the time the report was made by the defendant. The foregoing statutes refer to foreign corporations generally. Section 410 of the Civil Code, which refers to domestic corporations, except such as are elsewhere provided for, is direct authority for the receipt, by a corporation, of mines, manufactories, and other like property in payment of the capital stock, and such stock shall be deemed fully paid-up stock.

With these provisions before us, we certainly cannot say that in Montana it is the rule that the capital stock of a corporation shall be deemed to be paid for in money, except in those cases where there is direct legislative declaration to that effect. There cannot be even a presumption indulged in favor of such a rule. We have had for some time special statutes governing the organ-

ization of bank and trust companies, and possibly other corpora-
tions; but they had reference only to domestic concerns. An
abortive attempt was made by the legislature in 1905 to correct
the abuses which had arisen under the general laws relating to
foreign corporations doing business in this state; and finally, in
1907, the Tenth Legislative Assembly seems to have made pro-
vision by which high financiering of the character conducted by
the defendant will hereafter be made impossible. The enact-
ment of this statute is not of any avail here, however, for at
the time Clements made the report there was not any statute in
force requiring the capital stock of the Aetna Banking and
Trust Company to be paid in cash, while every inference to be
drawn from the laws is that such capital stock might be paid
in something else than money. Under these circumstances, when
the state charged that the report contained a false statement re-
specting the amount of the capital stock actually paid in it as-
sumed the burden of proving that the capital stock had not been
paid either in money or any other property, such as the corpora-
tion might have received for its capital stock, and, having failed
to do this, the order directing a verdict of acquittal was proper.

If it be suggested that, by failing to specify what portion of
the capital stock of this bank had been paid in something other
than cash, the defendant thereby manifested his purpose to have
the public believe that the full amount of $100,000 had actually
been paid in money, it is sufficient to say that the state did not
proceed upon that theory, for there is not any allegation in the
information that in making the statement, "the amount of the
capital stock actually paid in is $100,000," the defendant meant
thereby that it had been paid in cash.

We find no error in the record. The order is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.